**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MICHELLE M. LAVOIE,** )
)
**Plaintiff,** )
) **CIVIL ACTION**
**v.** )
) **No. 14-1352-JWL**
**CAROLYN W. COLVIN,** )
**Acting Commissioner of Social Security,** )
)
**Defendant.** )
)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding errors in the Administrative Law Judge's (ALJ) decision that leave its bases unclear, the court ORDERS that the final decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

## I. Background

Plaintiff applied for SSI benefits, alleging disability beginning December 1, 2009. (R. 19, 310). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She asserts numerous errors in the

ALJ's analysis at step three of his decision and in assessing Plaintiff's residual functional capacity (RFC).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ's decision contains errors that leave the court unable to determine the bases for the credibility determination or for the ALJ's relative weighing of the healthcare provider's opinions.

## II. Discussion

Plaintiff's Brief asserts numerous errors in the ALJ's alleged failure to precisely follow the Commissioner's regulations, the Social Security Rulings, or case law. (Pl. Br. 4-20, passim). Yet, as to most, if not all of the errors alleged, the court is unable to identify allegations of prejudice to Plaintiff resulting from them. It is as if counsel perceives "error at large" requiring remand whenever the ALJ fails to precisely follow the intricacies of Social Security law. That is not the case. Both in reviewing an ALJ's consideration of medical evidence and in reviewing his credibility determination, the Tenth Circuit has recognized that a court "cannot insist on technical perfection," but is guided instead by common sense. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166, 1167 (10th Cir. 2012). The court explained:

> Where . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense.

Id. 695 F.3d at 1166; see also Bowen v. Yuckert, 482 U.S. 137, 157 (1987) (O'Conner, J., concurring) ("Perfection in processing millions of such claims annually is impossible.").

By way of example, Plaintiff asserts several technical errors in the ALJ's step three determination--that Plaintiff's mental impairments do not meet or equal a Listed impairment. (Pl. Br. 4-9). She implies, without explicitly arguing, that her condition meets Listing 12.06. (Pl. Br. 5) ("[e]ven if Plaintiff's anxiety disorder did not meet Listing 12.06"). But she does not point to particular record evidence which demonstrates that the required criteria of Listing 12.06 are met. And, her argument suggests that her condition, at least potentially, equals the severity of a mental Listing. Id. ("the ALJ failed to consider whether, [sic] the combination of all three psychiatric disorder [sic] equaled the severity of a mental impairment listing."). But, medical equivalence to a listing may be established only by showing that Plaintiff's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). And, Plaintiff does not point to a particular mental impairment Listing which she believes is medically equaled, nor does she point to record evidence which demonstrates equivalence in severity and duration to the criteria of that Listing.

And, as noted above, it is Plaintiff's burden at step three of the sequential evaluation process to demonstrate that her condition meets or equals the severity of a Listed impairment. Blea, 466 F.3d at 907; accord, Dikeman, 245 F.3d at 1184; Williams, 844 F.2d at 751 n.2. She has not done so here. Moreover, despite Plaintiff's assertion that "[t]he burden of proof is on the agency" (Pl. Br. 20), the only burden on the agency in a Social Security disability proceeding arises after Plaintiff has proven what is her residual functional capacity and that it precludes her from performing any of her past

relevant work. E.g., Blea, 466 F.3d at 907; Dikeman, 245 F.3d at 1184; Williams, 844 F.2d at 751 n.2. Then, at step five the agency must prove only that jobs, which are within the RFC proven by Plaintiff as assessed by the ALJ, exist in significant numbers in the economy. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Assuming that the ALJ in fact technically erred with respect to his step three determination in the ways in which Plaintiff argues, Plaintiff has shown no prejudice from those errors, because she has not shown that her condition meets or equals the severity of one of the mental Listings. Therefore, the form of Plaintiff's argument appears merely to be a suggestion that the court should undertake a de novo consideration, and determine for itself at step three whether Plaintiff is disabled. As already noted above, the court is without authority to reweigh the evidence or to substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Most of Plaintiff's arguments with respect to the RFC assessment are similarly flawed. Nevertheless, Plaintiff has raised two issues which, when considered together, justify remand for a proper explanation of the credibility determination and of the relative weighing of the healthcare providers' opinions.

In arguing that the ALJ erred in weighing the opinion of Mr. Hill, the social worker that provided therapy for Plaintiff's mental disorders, Plaintiff asserted that at the hearing the ALJ "prevented Plaintiff's representative from questioning the medical expert with reference to Mr. Hill's opinion because his opinions were 'from a non-medically acceptable source, because they're from Mr. Hill.'" (Pl. Br. 15) (quoting R. 111). In her

Brief, the Commissioner argued that the ALJ reasonably discounted Mr. Hill's opinions, but she did not address the fact that the ALJ cut off Plaintiff's cross-examination of the testifying psychiatric expert with regard to Mr. Hill's opinions. (Comm'r Br. 14-15).

Here, Dr. Cohen, the psychiatric expert procured by the ALJ to testify as a medical advisor at the hearing, testified that he had reviewed all of the medical records in the "F" exhibits and that he had formed an opinion regarding Plaintiff's medically determinable mental impairments, and he stated his opinion regarding which of Plaintiff's mental impairments are severe within the meaning of the Act. (R. 86-113). During his testimony, Dr. Cohen was permitted to question Plaintiff, seeking clarification of certain of her reports to her mental healthcare providers, and at times that questioning was somewhat contentious. (R. 86-98). Thereafter, Dr. Cohen testified regarding the severity of Plaintiff's condition in each of the four basic mental functional areas, and he opined that Plaintiff's condition does not meet or equal a Listing. (R. 100-06). Finally, he testified as to his opinion regarding Plaintiff's mental limitations. (R. 106-10).

Plaintiff's representative, Mr. Rutschmann, was given the opportunity to cross-examine Dr. Cohen, and the following dialogue ensued upon the beginning of that cross-examination:

> Q (By Plaintiff's non-attorney representative, Mr. Rutschmann.) The global assessment of function s[c]ores have remained in the upper 30s to low 40s for at least the last year or so, which would suggest serious impairment based on the clinician's evaluation -- personal evaluation of the claimant's --
>
> ALJ: Mr. Rushman. [sic]

REP: How do you explain that?

ALJ: Mr. Rushman [sic], before you get too far into that question, those are opinions from a non-medically acceptable source, because they're from Mr. Hill, the social worker, right?

REP: I suspect there are some from Dr. Madali [sic]. I'll look up.

ALJ: Sure. Well, if you have those, that would be fine.

PE: (By the Psychiatric Expert, Dr. Cohen.) I -- actually I didn't see any but were -- that were not from the social worker.

(R. 111). Plaintiff's representative then accepted Dr. Cohen's assertion, but objected to Dr. Cohen's testimony, arguing that it was improper because Dr. Cohen "examined the claimant from a medical standpoint, asked questions, cherry-picked questions from the record, and then disbelieved her answers, and used his preconceived answers of her answers to form his medical opinions. He disregarded whatever she said." Id. at 112.

In his decision, the ALJ relied on Dr. Cohen's opinion:

> Richard Cohen, M.D., an impartial psychiatric medical expert, testified that the claimant's daily activities were inconsistent with her allegations of impairment. Specifically, Dr. Cohen noted that the claimant was able to play online games for several hours and to drive a car for thirty minutes, which he stated is a very complex activity. She relates well to others and is able to communicate clearly. He, as most experts in this matter, opined that the claimant was capable of performing simple tasks, could work in a non-public environment and function well in a low stress job. I assign Dr. Cohen's opinion great weight as it is consistent with the claimant's longitudinal medical record and the opinions of other experts in this matter.

(R. 27) (emphases added). In a footnote, the ALJ explained that Plaintiff's representative objected to Dr. Cohen's testimony for exhibiting bias, and the ALJ found "no evidence of bias on this record." (R. 28, n1).

On the record here, the court cannot find that the evidence supports the ALJ's determination to give great weight to Dr. Cohen's opinion. Although Mr. Hill is a social worker and not an acceptable medical source within the meaning of the regulations, Mr. Hill, physician's assistant Carlson, and Dr. Maddali--all from the Central Kansas Mental Health Center--are the only mental healthcare providers who actually treated Plaintiff, and their records reveal treatment between June, 2009 and June, 2013. (R. 607-36, 642-711, 904-19, 923-92, 1061-1111). Beyond that, only Dr. Hough, a psychologist, examined Plaintiff at the request of the agency and provided a report of that examination. (R. 788-95). The ALJ's bare assertion that Dr. Cohen's opinion "is consistent with the claimant's longitudinal medical record" (R. 27 ), rings very weak, especially since Dr. Cohen did not address the GAF scores of 30's and 40's assigned in Mr. Hill's treatment notes, and since the ALJ did not allow Plaintiff to cross-examine Dr. Cohen in that regard. Moreover, the ALJ's finding that Dr. Cohen's opinion is consistent with "the opinions of other experts in this matter," id., appears to rely upon the fact that Mr. Hill and Ms. Carlson are not acceptable medical sources, and are therefore not "experts," ignores that Dr. Maddali (an indisputable expert) also adopted one of Mr. Hill's opinions, ignores Mr. Hill's and Ms. Carlson's opinions in making that finding, ignores the fact that only one other "expert" examined Plaintiff, and ignores that the "other experts in this matter" whose opinions are consistent with that of Dr. Cohen formed their opinion based only upon a review of the record evidence, and before Plaintiff's mental health treatment records from 2012 and 2013 were entered into the record. Although there may be bases

to affirm the ALJ's findings in this regard, those bases are tenuous at best, in the circumstances. In light of the fact that the ALJ cut off Plaintiff's cross-examination of Dr. Cohen regarding Mr. Hill's treatment records, the better course is to remand for further explication.

The second issue suggesting remand, has to do with one of the bases given by the ALJ to support his credibility finding. The ALJ stated that Plaintiff:

> has been an unreliable reporter of her substance intake. For example, the claimant reported she was imbibing up to 7 drinks a week in late 2012, and had been for some time. In mid-2011, she reported that she was not drinking at all, and had not consumed any since 2009. Either this is evidence of the eruption of a significant behavioral change, or the claimant is not being completely candid in her relation of her substance use.

(R. 28).

Using charged language in an unseemly attack on the ALJ, counsel argued that this statement was not supported by the record evidence. (Pl. Br. 19-20) (Asserting that, in his discussion the ALJ "impugned Plaintiff's credibility," made a "snide remark," and used "innuendo."). In a footnote to her Brief, the Commissioner conceded "that the ALJ did not cite to records showing inconsistent statements on this issue," but argues that any misstatement "does not undermine the ALJ's reliance on Plaintiff's failure to disclose her benzodiazepine addiction to her [mental healthcare] providers." (Comm'r Br. 13, n.9).

It is true that the ALJ might properly rely on Plaintiff's failure to report her past benzodiazepine addiction to her current mental healthcare providers in the circumstances of this case. However, it is also true that alcohol use is another alleged but unsupported

inconsistency in Plaintiff's reporting upon which the ALJ relied to discount the credibility of Plaintiff's allegations of symptoms resulting from her impairments.

> Because a credibility assessment requires consideration of all the factors "in combination," [] when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (emphasis in original)(quoting Huston, 838 F.2d at 1132 n.7 (citation omitted)).

In the circumstances, the court finds that the better course is to remand the Commissioner's decision for further consideration and explanation, even though there may be other reasons, supported by record evidence, to affirm the decision below.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 10th day of March 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**